## JOHN W. RUDY v. THE COMMONWEALTH.

ERROR TO THE COURT OF OYER AND TERMINER OF LAN-
CASTER COUNTY.

Argued May 20, 1889—Decided October 7, 1889.

1. On the trial of an indictment for murder, it is not error to permit the commonwealth to stand aside jurors brought into court on a special venire, as well as those returned as summoned on the regular panel.

2. Where the prisoner sets up an alibi as a defence, on the trial of such an indictment, the burden is upon him to prove the alibi to the satisfaction of the jury, and if he fails so to do, it is valueless to him as a substantive defence.

3. But an alibi is as much a traverse of the indictment as any other defence, and evidence tending to establish it, though not clear, may, with other facts of the case, raise a reasonable doubt of guilt, to the benefit of which the prisoner is entitled.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 357 January Term 1889, Sup. Ct.; court below, No. 93 January Term 1888, O. & T.

On January 20, 1888, the grand jury returned as a true bill an indictment charging John W. Rudy with the murder of Christian Rudy. The prisoner being arraigned pleaded, not guilty.

On June 6, 1888, the indictment was called for trial, and, the panel of jurors being exhausted before a jury was obtained, a special venire was awarded. Upon the return of this venire, the eleventh juror was obtained, when the list of jurors summoned thereon was also exhausted. A special alias venire was then issued, and from those summoned and returned H. L. Trout was called as a juror, and was stood aside by the commonwealth. To this standing aside the prisoner objected, but the objection was overruled; exception.[1] H. L. Musser was then called, not challenged, and was sworn as the twelfth juror.

The trial then proceeded when it was made to appear that Christian Rudy, the deceased, was an inmate of the Lancaster County almshouse, and was last seen alive about half past four o'clock, December 4, 1887. The steward of the almshouse testified that he then saw the deceased walking slowly in the direction of the place where his body was found the morning of the next day, December 5th, in a field not far from the almshouse. There was an incised wound above the ear, made apparently by a sharp instrument, and the back part of the head was crushed as if by a blow from a blunt instrument.

John W. Rudy, the prisoner, was the only son of the deceased, and was about thirty years of age and a carpenter by trade. Late in the afternoon of Sunday, December 4th, he was seen near the place where his father's body was afterwards

Statement of Facts.

found. He was also seen at that place the next morning by a witness who described his movements thus: "I seen him down there in the field. He was in a stooped position, as though he was in the act of taking hold of something; and when he saw me looking at him, he got up and went behind Mr. Bair's fence. He ran over behind the fence, just as though he wanted to hide. I couldn't see anything of him there except half of his face; and then I went in the house and sat the bucket of water down, and looked out the window, and by this time he was at this body again. He was in the same position he was in the first place, in the act of taking hold of something. Just about this time he saw me, and he stood up; and about that time Mr. Groff hollered at him and asked him what he was doing down there. He came up and said, 'his father was lying down there dead, and some person killed him.'"

There was no direct testimony establishing the guilt of the prisoner but many other implicating circumstances were shown in evidence. His hatchet was examined and what were considered by experts to be stains of human blood were found upon it. It was shown that the deceased was the beneficiary in a policy or certificate of life insurance issued by a beneficial association, the proceeds of which in part were distributable on his death to the prisoner.

Jacob Witch, a witness called for the prisoner, testified that on Monday morning the witness went out where the body of the deceased was found lying in the field; several men were there, including the prisoner who was standing near the dead body; the witness asked the prisoner, "What is that for a dead man?" The defendant replied, "That is my father; the poor-house fellows killed him."

Q. What else, if anything, did John say to you about the way these poor-house people treated his father?

Objected to by the commonwealth.

Q. Did or did not John Rudy, at the time he said, "some one of the poor-house fellows killed my father," also say, they have stolen his goods, and were always annoying him and teasing him, in the presence of the body, immediately after it was discovered that his father was killed?

Objected to by the commonwealth.

By the court: It does not refer to the killing at all. Objection sustained; exception.[2]

Charge of Court below.

Q. Did Christian Rudy complain to you that the people at the poor-house and the inmates abused him and treated him badly?

Objected to by the commonwealth.

By the court: Objection sustained; exception.[3]

The prisoner introduced the testimony of several witnesses that at five o'clock on the evening of December 4th he was at his home, a mile and a half from the place where the murder was committed, with no evidence of the crime on his person or clothing, and from that hour until the next morning he was accounted for.

At the close of the testimony, the court, LIVINGSTON, P. J., after instructing as to the law of homicide, in the different degrees, the weight to be given to circumstantial evidence and the principles governing its consideration, charged the jury as follows:

In addition to and under his plea of not guilty, the prisoner sets up as a defence an alibi; that is to say, he alleges, and has offered evidence for the purpose of showing, that he was not present at the place where the murder was committed, at the time when it was perpetrated, but that at that time he was at another place, or other places, and could not, therefore, be guilty of the high crime charged against him. The evidence as to this part of the defence should be carefully scrutinized and weighed by the jury as in all cases. It requires, frequently, very great nicety as to the recollection by witnesses of particular dates and events, of particular hours, half hours, and even minutes, of a day or night on which the offence to which it relates was committed, and this, too, frequently at long periods after the commission of the crime.

When an alibi is satisfactorily established, it forms one of the strongest, fullest and most perfect defences it is possible for a man to make, because no man can be in two separate and distinct places at one and the same time.

[The setting up of an alibi by the prisoner does not relieve the commonwealth from furnishing, as it has done here, full proof of the commission of the offence or crime charged.][4] Nor does his setting up an alibi as a defence change the burden of proof cast upon the commonwealth by his plea of not

guilty, or waive his right to demand from the commonwealth, before he can be convicted, full and complete proof of his guilt, beyond a reasonable doubt.

[Where a prisoner sets up an alibi as a defence, the burden of proving his alibi to the satisfaction of the jury is thrown upon him. If he does not do this, his defence of alibi fails entirely.] [5]  [Where a defence rests on proof of an alibi, such proof must cover the whole time during which the crime charged was perpetrated, the time when the evidence shows it was committed, so as to preclude the possibility of the presence of the prisoner at the place where, and at the time when, it was perpetrated.] [6]

[The value of this defence, the alibi, clearly consists in the prisoner proving his alibi to the satisfaction of the jury; if he fails to do so, it is valueless as a complete defence.] [7]  But an alibi is as much a traverse of the crime charged, however, as any other defence; and proof tending to establish it, though not clear, may, with other facts of the case, raise a reasonable doubt of the guilt of the accused, and therefore it must not be excluded from the cause and the jury.

Where the fact of killing proved by the commonwealth, is, as in this case, not defined distinctly in point of time, but may have taken place within or between certain periods of time, the alibi must cover the entire period in its proof, otherwise the evidence given in proof of the alibi may be true, and the fact proved by the commonwealth may also be true. There is no contradiction, unless the evidence supporting the alibi covers the whole period.  [And where the evidence is so imperfect as not to satisfy the jury as to an alibi, they will not find it to be a fact, and will not say it is a defence,] [8] but will then look at and examine all the evidence in the cause, including that which relates to the alibi, and from the whole evidence make up their verdict.

You, gentlemen of the jury, must be satisfied from the evidence beyond a reasonable doubt, in order to warrant you in finding a verdict of guilty, 1. That Christian Rudy was murdered, that a murder was committed.  2. That John W. Rudy, the prisoner at the bar, is the guilty party, is the man who committed the murder.

Of the first proposition I presume you will have no doubt;

a murder has been proved. Christian Rudy was killed as charged in the indictment. Therefore the great question here is, was this murder committed by John W. Rudy, the prisoner at the bar? [In seeking a solution of this pivotal question, you will probably first examine the testimony as to the alibi; and in doing this you will examine all the evidence in the cause bearing upon the presence of the prisoner, John W. Rudy, at the time and place of the murder, as well as that bearing upon his absence from that place at that, the time of the murder. You have heard it all from the stand, and you have heard it more fully and ably commented on by the learned counsel than is usual in courts of justice, and from it must form your own judgment. If the evidence has satisfied you that the prisoner has proved his alibi, that he, John W. Rudy, was at some other place, or at other places at and during the whole period of time when this murder was committed, and was not there at the place when it was committed, then your verdict should be not guilty; for, as we have said, a man cannot be in two different and distinct places at the same time. But, if the evidence presented in this case on this question of alibi does not prove an alibi, you will then from a full, fair, careful examination of all the testimony presented in the cause, say whether or not the prisoner killed the deceased, whether he committed the murder or not, and if he did, do all the circumstances presented and proved enable you to say beyond a reasonable doubt that such murder was committed by him, wilfully, deliberately and premeditatedly, with intent to kill? If you find it was, then your verdict should be guilty of murder in the first degree.] [9]

\* \* \* \* \* \* \* \*

The jury returned a verdict that the prisoner was guilty of murder of the first degree. Subsequently a rule for a new trial was discharged, when on motion of the district attorney, judgment was passed. The prisoner thereupon took this writ, assigning as error:

1. The permission given to the commonwealth to stand aside juror, H. L. Trout.[1]

2, 3. The refusal of defendant's offers.[2] [3]

4–9. The portions of the charge embraced in [ ] [4 to 9]

10. The failure to charge that the necessary ingredients to constitute murder of the first degree had not been proved to exist.

*Mr. John A. Coyle* and *Mr. Marriott Brosius* (with them *Mr. B. F. Eshleman*), for the plaintiff in error:

Counsel cited, upon the first assignment of error: Commonwealth v. Twitchell, 1 Brewst. 558; Haines v. Commonwealth, 100 Pa. 317. Upon the second and third assignments of error: Rhodes v. Commonwealth, 48 Pa. 396; O'Mara v. Commonwealth, 75 Pa. 424. Upon the subject of the alibi: Turner v. Commonwealth, 86 Pa. 54; Meyers v. Commonwealth, 83 Pa. 131; Pannell v. Commonwealth, 86 Pa. 260; Coyle v. Commonwealth, 100 Pa. 573. Upon the tenth assignment of error: Kelly v. Commonwealth, 1 Gr. 484; Lanahan v. Commonwealth, 84 Pa. 80.

*Mr. W. N. Apple,* and *Mr. W. D. Weaver,* District Attorney, (with them *Mr. E. K. Martin*), for the defendant in error:

Other than cases cited by the prisoner's counsel, the counsel cited: Watson v. Commonwealth, 95 Pa. 422; Ortwein v. Commonwealth, 76 Pa. 423; Commonwealth v. Daley, 2 Clark 361.

OPINION, MR. JUSTICE STERRETT:

The prisoner was tried and convicted of patricide of the first degree, the most heinous type of murder. The corpus delicti was clearly proved. The evidence was quite sufficient to justify the jury in finding that the prisoner's father was brutally murdered. The position in which the deceased was found, the nature of the wounds that must have caused his almost instantaneous death, the character of the instrument with which they appeared to have been inflicted, and all the surrounding circumstances, pointed to the commission of a wilful, deliberate, and premeditated murder. But of course that was a question of fact for the jury, and to them it was fairly and impartially submitted.

The main question of fact was whether the prisoner was the guilty agent. There was no direct and positive evidence of his guilt. The evidence was entirely circumstantial, but it was sufficient to justify the submission of the case to the jury;

and that was done in a clear and comprehensive charge embodying such instructions as were necessary for the guidance of the jury in properly considering and applying the evidence.

Some exceptions taken to the rulings and charge of the court, have been assigned for error.

The first specification is without merit. The practice of standing aside jurors had its origin in the construction given by the courts to the statute 33 Edward I., enacted in 1305; and like many other customs, it descended to us from the mother country. In the higher grades of felony, at least, the practice has been so long continued, and so uniformly sanctioned that it has acquired the force of positive law: Haines v. Commonwealth, 100 Pa. 317. No good reason can be suggested why it should not be adhered to in the case of jurors brought into court on a special venire, as well as those on the regular panel.

There was no error in disallowing the questions recited in the second and third specifications. Under the circumstances the proposed evidence was neither competent nor relevant.

The subjects of complaint in the fourth to ninth specifications inclusive are instructions on the subject of alibi. The sentence which constitutes the fourth specification is improperly severed from its connection with the next succeeding sentence. When read together as they appear in the charge they are as follows: " The setting up of an alibi by the prisoner does not relieve the commonwealth from furnishing, as it has done here, full proof of the commission of the offence or crime charged. Nor does his setting up an alibi as a defence change the burden of proof cast upon the commonwealth by his plea of not guilty, or waive his right to demand from the commonwealth, before he can be convicted, full and complete proof of his guilt beyond a reasonable doubt." The first sentence relates to the necessity of proving the corpus delicti. The second to the necessity for full and complete proof of guilty participation in the felony. There is no error in either, and when read together as they were to the jury, the idea intended to be conveyed is perfectly clear, and must have been so to the minds of the jury.

What was said by the learned president of the Oyer and Terminer, in relation to the defence of alibi, constitutes a full, clear, and accurate statement of the law on that subject. The burden of proving it was clearly on the prisoner. If he failed

to do so to the satisfaction of the jury, the alleged alibi, as a substantive defence, was valueless; but that did not deprive him of the benefit of his evidence on that subject, so far as it, in connection with other testimony in the case, may have had a tendency to create a reasonable doubt as to his guilt. Immediately after instructing the jury that an alibi "is valueless as a complete defence," unless it is proved "to the satisfaction of the jury," the learned judge said: "But, an alibi is as much a traverse of the crime charged, however, as any other defence, and proof tending to establish it, though not clear, may, with other facts of the case, raise a reasonable doubt of the guilt of the accused, and therefore it must not be excluded from the cause and the jury."

In Meyers v. Commonwealth, 83 Pa. 141, cited by the prisoner's counsel, the court below had instructed the jury that they must "be satisfied beyond a reasonable doubt," etc. This court, commenting on that part of the charge, said: "This statement is too stringent, and throws the prisoner upon a degree of proof beyond the legal measure of his defence. That measure is simply proof which is *satisfactory*—such as flows fairly from a preponderance of the evidence. It need not be beyond doubt. . . . . Where the evidence raises a balancing question, and the mind is brought to determine its preponderance, there may be a doubt still existing in the mind, yet the actual weight may be with the prisoner, and this proof should be considered *satisfactory*." Other authorities to the same effect might be cited, but it is unnecessary.

All the evidence, including that bearing on the question of alibi, was fully and carefully submitted to the jury, with special instructions that if, from all the evidence in the case, they had a reasonable doubt of the prisoner's guilt, their verdict should be not guilty. If there was any error in the trial of the cause it was in the finding of the jury that the prisoner was the guilty agent. The court below, who heard the testimony and saw the witnesses, was satisfied with the finding of the jury. There is nothing on the record to justify us in setting aside the verdict.

Neither of the specifications of error is sustained.

> Judgment affirmed, and it is ordered that the record be remitted to the court of Oyer and Terminer of Lancaster county, for the purpose of execution.