## Commonwealth v. Crocco. No. 2.

*Liquor law—Possession—Purchase of liquor in 1921—Possession in 1923— 18th Amendment—Volstead Act—Acts of May 5, 1921, and March 27, 1923.*

1. Liquor purchased after the 18th Amendment and the Volstead Act, and prior to the Pennsylvania Act of May 5, 1921, P. L. 407, was illegally acquired.

2. The 11th section of the Act of May 5, 1921, P. L. 407, was not intended to protect the possession in one's private dwelling of intoxicating liquors unlawfully acquired against the provisions of the Volstead Act, but was only intended to operate with respect to liquor lawfully acquired.

3. Where liquor was bought in 1921 and kept in possession by the purchaser until after the passage of the Act of March 27, 1923, P. L. 34, the purchaser may be convicted under the Act of 1923 of unlawful possession.

4. Where defendant is shown to be in possession of intoxicating liquor, the burden is on him to show that he lawfully acquired it.

Motions for arrest of judgment and for a new trial. Q. S. Jefferson Co., Oct. Sess., 1923, No. 5.

*Walter E. Morris*, District Attorney, for Commonwealth.

*Charles J. Margiotti* and *A. S. Scribner*, for defendant.

CORBET, P. J., Nov. 7, 1924.—The defendant was indicted, *inter alia*, for the unlawful possession of intoxicating liquor for beverage purposes and convicted.

The disposition, before trial, of a motion made by defendant for return of the liquor, etc., covered everything now averred in arrest of judgment, and we see no reason for again going over the same ground, our views being unchanged.

· The case might have been submitted to the jury on the sole issue of whether or not the defendant unlawfully possessed himself of the liquor subsequent to the passage of the Act of March 27, 1923, P. L. 34, under whose provisions the indictment was drawn, there being sufficient evidence to warrant the submission of such issue, but a sense of duty forbade that the issue should be so

narrowed. If it be determined on appeal, if one be taken, that the court erred in matters inconclusive of the case, the issue mentioned may remain for disposition by trial.

Section 3 of the Act of March 27, 1923, P. L. 34, made it "unlawful for any person to possess . . . any intoxicating liquor for beverage purposes, except as" thereinafter "set forth."

Section 4 provides: "It shall not be unlawful, however, to possess intoxicating liquor for beverage purposes in one's *bona fide* private dwelling, while the same is occupied and used by him as his dwelling only, *provided such liquor was lawfully acquired prior to the passage of this act.*" And "that proof of the possession of such intoxicating liquor shall be *prima facie* evidence that the same was acquired, possessed and used in violation of this act."

The important question at present is, did the defendant lawfully acquire this liquor prior to the passage of the act?

It was testified and admitted by the defendant that the 163 quart bottles of intoxicating liquor were in his possession on Aug. 22, 1923, and had been since he acquired it.

Defendant testified he got the liquor the first part of April, 1921, from an Italian who gave his name as Joe Caputo, and said he came from Philadelphia, but wouldn't give his address; that he got twenty cases—twelve quart bottles to the case, and twenty-four pint bottles to one case of pints he got; that he paid the man $40 a case, in all $800; that the liquor came in a covered truck which the man was driving; that it was sold, delivered to him and paid for at his house in Conifer, Jefferson County. If this testimony be accepted as correct, the liquor was acquired by defendant prior to the passage of the Act of March 27, 1923. But was it lawfully acquired?

Under the laws of Pennsylvania as they existed in April, 1921, irrespective of the 18th Amendment to the Constitution of the United States and the Volstead Act passed by Congress to enforce it, the acquisition was unlawful, for the reason that the sale was in violation of the laws of the Commonwealth. There was no pretence that the seller was licensed to sell in this county (as in fact he was not), and even if he had been licensed in Philadelphia, from whence he was roving, according to his statement, still his sale in this county was wholly unlawful. Although, under the law of Pennsylvania, this defendant may not have been subject to a criminal prosecution for making the purchase, yet he helped the seller to commit a crime, and has no standing to say he acquired the liquor lawfully.

The 18th Amendment thereto became a part of the Constitution of the United States on Jan. 29, 1919. Its first two sections are as follows:

"Section 1. After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territory subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited.

"Section 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

Other provisions of the United States Constitution are, article VI:

"Section 2. This Constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.

"Section 3. The senators and representatives before mentioned, and the members of the several state legislatures, and all executive and judicial offi-

cers, both of the United States and of the several states, shall be bound, by oath or affirmation, to support this Constitution."

The National Prohibition Act for the enforcement of constitutional prohibition, passed by Congress, became law Oct. 28, 1919: Statutes of the United States, First Session, 66th Congress, 305. Portions which may be pertinent to the present matter are as follows, viz.:

"Section 3. No person shall, on or after the date when the 18th Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented.

"Section 25. It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title, or which has been so used, and no property rights shall exist in any such liquor or property.

"Section 29. Any person who . . . sells liquor in violation of this title shall for a first offence be fined not more than $1000 or imprisoned not exceeding six months, and for a second or subsequent offence shall be fined not less than $200 nor more than $2000 and be imprisoned not less than one month nor more than five years.

"Any person . . . who . . . violates any of the provisions of this title, for which offence a special penalty is not prescribed, shall be fined for a first offence not more than $500; for second offence not less than $100 nor more than $1000, or be imprisoned not more than ninety days; for any subsequent offence he shall be fined not less than $500 and be imprisoned not less than three months nor more than two years.

"Section 33. After Feb. 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner, within ten days after the date when the 18th Amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and of his *bona fide* guests when entertained by him therein; *and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used.*"

It is quite clear the amendment to the National Constitution and the Act of Congress passed to enforce it, which have been referred to, were violated when Joe Caputo sold the liquor to the defendant, and that the latter did not thereby acquire the liquor lawfully, but, on the contrary, unlawfully.

It is assigned that we erred in so holding, and urged upon us that the unlawful acquisition in violation of the amendment and act have nothing to do with this case, especially as section 22, added to our Act of May 13, 1887, P. L. 108, by the 11th section of the Act of May 5, 1921, P. L. 407, contained this provision, viz.: "It shall not be unlawful to possess intoxicating liquor in one's private dwelling, provided such liquor is for use only for the personal consumption of the owner thereof and his family residing in such

dwelling, and of his *bona fide* guests when entertained by him therein, which entertainment shall not be deemed an unlawful furnishing."

We cannot give our approval to this proposition.  Defendant's purchase was made subsequent to the time the constitutional amendment and Act of Congress became effective, and before the passage of our said Act of May 5, 1921.

In the National Prohibition Cases, 253 U. S. 350, the sixth and seventh conclusions of the court are as follows, viz.:

"6. The 1st section of the amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act, whether by Congress, by a state legislature or by a territorial assembly, which authorizes or sanctions what the section prohibits.

"7. The 2nd section of the amendment—the one declaring 'the Congress and the several states shall have concurrent power to enforce this article by appropriate legislation'—does not enable Congress or the several states to defeat or thwart the prohibition, but only to enforce it by appropriate means."

The Constitution of the United States is the supreme law of the land, and all executive, judicial and legislative officers of the United States and the several states and all the people are bound thereby: Dodge *v.* Woolsey, 59 U. S. (18 Howard) 331.

The Constitution, and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land: Rhode Island *v.* Massachusetts, 12 Peters, 657; McCulloch *v.* Maryland, 17 U. S. (4 Wheat.) 316.

"The power thus reserved to the states (by the 2nd section of the amendment) must be put forth in aid of the enforcement and not for the obstruction of the dominant purpose of the amendment.  It must not be in direct conflict with the Act of Congress in the same field:" Rugg, C. J., in Com. *v.* Nickerson, 236 Mass. 281; 10 A. L. R. 1568.

That which, under the supreme law of the United States, is an unlawful acquisition by a citizen of the United States is necessarily an unlawful acquisition by the same individual as a citizen of the state.  The supreme law extends into the state and over the individual.  The state is powerless to exempt or shield him from, or to defeat or thwart it; but is in duty bound to recognize, respect and accord it full force and effect.  If the laws conflict, that of the state must give way.

By the Act of Congress it was not unlawful to possess liquors in one's private dwelling for the personal consumption of the owner, his family residing, and his *bona fide* guests when entertained therein, if "lawfully acquired, possessed and used."  But it placed the burden of proving those facts upon the possessor in any action concerning the same.  And made no provision whereby the owner might either start or replenish his stock unlawfully—in violation of the Constitution and law.

If the 11th section of our Act of May 5, 1921, P. L. 407, by its addition of section 22 to the Act of May 13, 1887, P. L. 108, was intended to protect the possession in one's private dwelling of intoxicating liquors against the provisions of the Act of Congress, it was void from the start.  Our belief is, however, that it was not so intended, and that it was only intended to operate with respect to liquor lawfully acquired.  Thus interpreted and applied, it would concur with and not be in opposition to the Act of Congress.

The only reason for referring to the Act of May 5, 1921, P. L. 407, is because of the contention that during its existence it validated defendant's possession of the liquor he purchased about a month before it was enacted. We are of opinion it had no such effect. The act just referred to, as well as the prior Act of May 13, 1887, P. L. 108, was expressly repealed by section 18 of the Act of March 27, 1923, P. L. 34.

It is further contended that, as to the crime alleged in this instance, the last-mentioned act is *ex post facto*. That is not the case. The defendant was charged with possessing the liquor unlawfully on or about Aug. 22, 1923, after the act was approved, and in violation of it, and not with an offence committed before the enactment. The tenth conclusion of the court in National Prohibition Cases, 253 U. S. 350, is: "That power (confided to Congress and the states concurrently) may be exerted against the disposal for beverage purposes of liquors manufactured before the amendment became effective, just as it may be against subsequent manufacture for those purposes. In either case it is a constitutional mandate or prohibition that is being enforced."

Our Act of March 27, 1923, P. L. 34, is an exercise of the power granted by the amendment and of the police power of the Commonwealth "for the protection of the public welfare, health, peace, safety and morals of the people of this Commonwealth, and all of its provisions shall be liberally construed for the accomplishment of these purposes."

It is also contended the court erred in charging the jury that the burden was upon the defendant to establish by a preponderance of evidence his acquisition of the liquor was lawful. The jury was also charged that defendant was deemed to be innocent until the Commonwealth satisfied them of his guilt beyond a reasonable doubt. Of the latter, no complaint is made in any way.

Mention has been made, with respect to the possession of liquor, of the provision in the Act of Congress that "the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used," and quotation has been made from section 4 of our own Act of March 27, 1923: "That proof of the possession of such intoxicating liquor shall be *prima facie* evidence that the same *was acquired, possessed and used in violation of this act*."

It was proven, as well as admitted by defendant, that he was in possession of the liquor at the time charged. This *prima facie* evidence was binding on the jury till disproved: Tanner v. Hughes, 53 Pa. 289. The burden of overcoming it was placed on the defendant by the law. No greater or more strenuous measure of proof to be borne by defendant was stated than applies to an *alibi* (Fife v. Com., 29 Pa. 429; Rudy v. Com., 128 Pa. 500), the defence of insanity (Com. v. Barner, 199 Pa. 335), that with respect to proof of a license on a charge of selling liquor without license (Com. v. Wenzel, 24 Pa. Superior Ct. 467), and similar instances, in which the defendant has the burden. It was here incumbent on the defendant to show that his acquisition and possession of the liquor was not in violation of the act; that is, that it was lawfully acquired prior to the passage of the act. How could he do that save by a preponderance of evidence to establish it? Less proof would avail him nothing. The facts attending the acquisition were for the jury; whether they established a lawful acquisition was for the court. We held that defendant, instead of adducing any proof of a lawful acquisition, himself proved that his acquisition was unlawful.

If, since the passage of the Volstead Act, there be any known means whereby intoxicating liquors may be lawfully acquired for beverage purposes,

there are, doubtless, many thousand of persons who would like to know the method.

From what has been said, it follows that the pending motions must be overruled and refused.

### *Order.*

And now, Nov. 7, 1924, after hearing and due consideration, the motions in arrest of judgment and for a new trial are severally overruled and refused.

From Raymond E. Brown, Brookville, Pa.