Commonwealth *v.* Sarkis et al., Appellants.

Argued October 11, 1948. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Fine, JJ.

**196**

*Samuel G. Wagner* and *B. Meredith Reid*, with them *Morris F. Cohen*, for appellants.

*Samuel Strauss*, Assistant District Attorney, with him *William S. Rahauser*, District Attorney, and *Robert Van Der Voort*, First Assistant District Attorney, for appellee.

OPINION BY ARNOLD, J., January 14, 1949:

William Sarkis and William Thomas severally appeal from convictions of aggravated assault and battery. The cases were tried together and so argued here, and will be disposed of in one opinion. In the same trial Lawrence Nardini was acquitted.

In the early morning David Johns (the victim) and Donald Tannous were proceeding eastwardly in an automobile on the Boulevard of the Allies in Pittsburgh. A car driven by Nardini, with the defendants, Sarkis and Thomas, passed, and both cars stopped. Nardini remained in his car and the other men gathered at the corner of Smithfield Street. Two entirely disinterested witnesses, Hutchison and Burge, who were pedestrians, testified for the Commonwealth. They saw the four men get out of the cars, and after a very brief conversation, Sarkis (weight 170 pounds) knocked down Johns (weight 141 pounds). Sarkis then got on top of Johns, placed his knees on Johns' shoulders, and repeatedly struck him about the head and face with what appeared to be "brass knucklers," and this continued until Johns was rendered insensible. While this was going on, Thomas (the companion of Sarkis) held Tannous

(Johns' companion) and prevented him from interfering. The defendants then drove away, leaving their victim unconscious upon the street. Burge and Hutchison followed the assailants, secured the license number of their car, and reported the matter to the police. Johns, the victim, was taken to the Mercy Hospital, where he remained for seventeen days. The medical testimony was unchallenged. Johns suffered from cerebral concussion and contusions; compound fracture at the base of the skull; fracture of the nasal bones; fracture of the cheek bone; and multiple contusions and lacerations of the face. For three days he was only semi-conscious and had to be strapped to his bed because of delirium. The defendant, Sarkis, on the other hand, when he "gave himself up" to the police five days thereafter, exhibited no marks except upon his knuckles. These facts fully warranted the verdict.

After these proofs the Commonwealth called as its witness, Donald Tannous, who had been the companion of David Johns. The examination in chief continued until the witness testified that Johns "was swinging at Sarkis." The court then granted leave to the district attorney to cross-examine under his plea of surprise. The basis of that plea was a prior written statement signed and sworn to by Tannous, setting forth, inter alia, that Sarkis was the aggressor throughout, and that Johns had merely tried to defend himself. This was inconsistent with Tannous' testimony at the trial. The trial judge properly exercised his discretion: *Selden, Admr., v. Metropolitan Life Insurance Company,* 157 Pa. Superior Ct. 500, 43 A. 2d 571.[1] When confronted by the prior statement Tannous admitted that it was substantially correct.

---

[1] While it is better practice to suggest the basis for the surprise, i.e. the prior inconsistent statement, before permitting cross-examination, yet no harm is done to the opposite party if the basis for the surprise clearly appears thereafter.

David Johns, the victim, was next called by the Commonwealth and his examination continued until he testified that "it was a fair fight. I just lost, that's all." The district attorney then pleaded surprise, stating that the witness had made an oral statement to police officers while he was in the hospital, which was reduced to writing although unsigned by the witness. The police officers were then called and testified that they had taken such statement four days after the assault, and that the substance of the questions and answers was reduced to writing. The court sustained the plea of surprise and permitted the district attorney to cross-examine his own witness. The oral statement Johns had given the officers (and which became Exhibit 11) averred that Sarkis had made an unprovoked assault on him for the reason that "They were under the impression that after I quit the numbers business that I was responsible for the arrests that were being made." The plea of surprise was good, and the court properly allowed the cross-examination. In a criminal case the one party is the Commonwealth and not an individual. The rule that the impeaching statement must be made to the *party* or his counsel, cannot apply in a criminal prosecution. Any statement made to the representatives of the Commonwealth, as the law enforcement officers, is a statement made to the Commonwealth as a party. We know of no jurisdiction where this has not been held. That Exhibit 11 was only the substance of oral declarations later placed in question and answer form, is of no moment. The officers could testify to the *substance* of any oral statement of Johns, which could then be used to contradict the witness. The writing, Exhibit 11, while it stood no higher than an oral statement, did not fall below it.

But there is another reason why the district attorney had the right to cross-examine Johns, the victim, concerning his prior inconsistent statement. In the *Selden* case, supra, we called attention to the rule (page 511)

"permitting impeachment by former inconsistent statement where a party is *compelled* to call a witness [citing cases]." Though it may be that the district attorney is not *required* by a rule of law to call the victim, who is, of course, an eye witness, yet normally all eye witnesses should be called.[2] Therefore, if, without calling the victim the prosecution's case would be seriously damaged, or justice would not be done to the defendant, the Commonwealth is fairly bound and driven to call him, and if he prove hostile, his prior statements may be shown so that the Commonwealth may not be bound by his testimony: *Commonwealth v. Marrow et al.*, 3 Brewster 402. In *Donaldson v. Commonwealth*, 95 Pa. 21, a rape case, the Commonwealth did not call the physician who examined the victim, and the Supreme Court said: "We cannot forbear, however, remarking that, in our opinion, the physician who, on the day after the occurrence, examined the person of the girl upon whom the offence was alleged to have been committed, should have been called as a witness and required to testify by the district attorney. Whether his evidence tended to acquit or convict, it was demanded equally by the cause of humanity on the one hand, or of justice on the other." In the instant case if the Commonwealth had not called Johns, the victim, its cause would have been definitely prejudiced, and in addition the defendants would have been entitled to a charge from the court, on request, that the jury might presume that if Johns had been called, he would have testified in accord with the defendants, whose evidence was that it was "a fair fight" in which Johns was knocked down by a "lucky punch." On the other hand, we are not now deciding that the victim *must* be called by the Commonwealth, although, as pointed out in the *Donaldson* case, supra, it might be reversible error to refrain.

---

[2] Unless the district attorney has them in court and advises the defendant that he will not call them.

Except for an abuse of discretion the trial judge's decision that the Commonwealth, under the state of the record, should have called the witness will not be reviewed.

Appellants allege that the district attorney was not surprised by Johns having changed his testimony. If the defendants felt that the district attorney had fair warning that Johns was going to recant, such question ought to have been asked the district attorney, who had already stated on his official responsibility that he *was* surprised. We should certainly not be asked to consider comments of the newspapers, not a part of the record but quoted in the appellants' brief, to the effect that, in the opinion of the newspaper reporter, the district attorney anticipated that Johns would be a hostile witness.

The trial judge expressed his opinion that the verdicts should be either aggravated assault and battery or not guilty, and that simple assault and battery should not be found. This he had a right to do, for immediately following he charged: ". . . you always have the right to find what verdict you choose and it is for you to find the facts and under the law and the facts to reach a verdict."

The writing made by the police officers of the substance of Johns' oral statement made to them in the hospital was received in evidence as Exhibit 11 without objection. Johns had denied that he told the officers the facts stated in it, and gave reasons why he would not so have declared. This testimony, inconsistent with the prior statement, exculpated the defendants, who then cross-examined Johns along the line that the police officers, through mistake or fraud, wrote Exhibit 11. At a trial usually all exhibits automatically go out with the jury unless there is an objection thereto. In the instant trial no objection was made, and we can only assume that the defendants either desired the jury to

compare the written statement with Johns' testimony exculpating the defendants, or to compare what appeared in the statement written by the officers with the cross-examination indicating fraud or mistake. The defendants cannot take a chance on a verdict and then raise an exception.

Lastly, appellants complain that it was error for the court not to have charged the jury that the prior inconsistent statements of Tannous, and particularly of Johns, did not make substantive evidence, but were only evidence impeaching the testimony of those witnesses. At the close of the charge counsel for defense were asked: "Is there any request for additional charge or any correction . . .?" Commonwealth requested a charge on self-defense, which was made, and the court again asked respective counsel if the charge were satisfactory, and defendants' counsel replied, "yes." If counsel had requested such a charge it would have been given, as the court below stated in its opinion. Having taken no exception nor made such request, the error is now designated "fundamental." In *Commonwealth v. Blose,* 160 Pa. Superior Ct. 165, 50 A. 2d 742, Judge RENO, speaking for this Court, said (p. 170) : ". . . that the determination of the question whether prejudice indelibly and hurtfully permeated the trial depends in the final analysis upon the facts of the individual case. [Citing Kotteakos v. United States, 328 U. S. 750, 66 S. Ct. 1239, 1248]. 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . It is rather . . . whether the error itself had substantial influence. . . .' "[3] Here

---

[3] In many felonious homicide cases, some of them involving the death penalty, the Supreme Court refused to reverse because, under the facts of the case, the defendant was not prejudiced. See *Commonwealth v. Rumage,* 359 Pa. 483, 59 A. 2d 65; *Commonwealth v. Watts,* 358 Pa. 92, 56 A. 2d 81; *Commonwealth v. Thomas,* 357 Pa. 68,

we can be quite sure that the defendants were not harmed by the failure so to charge. The evidence of Burge and Hutchison fully established the defendants' guilt. Johns, either from reward or fear, patently tried to have the defendants acquitted. To a less degree Tannous did likewise. In *Commonwealth v. Schroeder*, 302 Pa. 1, 152 A. 835, the trial court charged that certain evidence affecting the credibility of the defendant's witness *was* substantive evidence of the defendant's guilt. The Supreme Court said: "Apparently the court did inadvertently treat the evidence as substantive proof. We are convinced that this instruction did defendant no harm and did not bring about her conviction." In the instant case, at most, the trial court omitted making a *definite* statement that the impeaching evidence was not substantive evidence. The trial judge, however, charged: "What did take place? If the injured person spoke the truth and you are ready to accept what he said, well and good, [acquit] but you are not to decide this case on the basis of what he told you and without reference to other evidence in the case, some of which I say is quite contrary to what he told us." [4]

---

53 A. 2d 112; *Commonwealth v. Moyer*, 357 Pa. 181, 53 A. 2d 736; *Commonwealth v. Barnak*, 357 Pa. 391, 54 A. 2d 865; *Commonwealth v. Chavis*, 357 Pa. 158, 53 A. 2d 96; *Commonwealth v. Bruno*, 316 Pa. 394, 175 A. 518; *Commonwealth v. Barrish*, 297 Pa. 160, 146 A. 553; and *Rudy v. Commonwealth*, 128 Pa. 500, 18 A. 344.

[4] The judge also charged: "The person upon whom the injury was inflicted has testified . . . that he . . . was as much at fault as any or all of the defendants or particularly William Sarkis, and that testimony of the injured person is completely at variance with the testimony of certain other Commonwealth witnesses [Hutchison and Burge] . . . The sailor [Hutchison] . . . and his companion [Burge], a young man from New Kensington, . . . presented an entirely different picture to you than that which the injured person himself did and what you are to be concerned about is not what a particular witness may have said, even though it was the injured person, but . . . what the facts were on the night in question."

Thus the jury was plainly told that it should acquit the defendants if it found that the version given by Johns and by both defendants and Nardini, was true; and that it should convict if it believed the testimony of Burge and Hutchison. The jury was told that if Johns was believed, the defendants should be acquitted. Johns' evidence could not be truthful if Burge and Hutchison told the truth. If the declarations of Exhibit 11 were made by Johns, the latter's credibility was destroyed. The verdict demonstrated that the jury did not believe Johns, for if it did, the defendants, under the charge, were to be acquitted. It is metaphysical to argue that while the jury found that Johns was untruthful because of his prior statement, the jury *might* also have used this prior statement as substantive evidence of the facts contained therein. The same facts contained therein were testified to by Burge and Hutchison. When the jury cast out Johns' evidence, only the testimony of Burge and Hutchison was left for the Commonwealth.

But for the just firmness of the trial judge the quite patent conspiracy between Johns and the defendants would have resulted in a miscarriage of justice. He is to be commended, and not criticised, for the conduct of the trial.

In Appeal No. 224, April Term, 1948, the assignments of error are overruled, the judgment of the court below is affirmed, and defendant, William Sarkis, is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.

---

"... if you should find that those were the circumstances and there was not any criminality that night at all but just an argument and just a fair fight or something of the sort such as referred to by the defendants, then you might find that it was not the fault of any of the defendants and that they are, therefore, to be found not guilty."

In Appeal No. 225, April Term, 1948, the assignments of error are overruled, the judgment of the court below is affirmed, and the defendant, William Thomas, is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.