**UNITED STATES of America**

v.

**Eric R. CLARKE, Horace R. Johnson.**

**Crim. No. 21319.**

United States District Court
E. D. Pennsylvania.

Aug. 1, 1963.

Drew J. T. O'Keefe, U. S. Atty., Joseph R. Ritchie, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for Eric R. Clarke.

Robt. N. C. Nix, Philadelphia, Pa., for Horace R. Johnson.

KRAFT, District Judge.

Defendants stand convicted by the verdict of a jury on charges of conspiracy, 18 U.S.C. § 371, and selling narcotic

drugs not pursuant to written orders, 26 U.S.C. § 4705(a). Presently before us are motions of both defendants for judgment of acquittal and for a new trial.

The Government's evidence, largely uncontradicted, discloses that on March 15, 1962, Agent Ripa, accompanied by the Government's "special employee", Joseph Flores, met the defendants, both licensed medical doctors, and purchased narcotics from them without written orders prescribed by the Act of Congress. Agent Ripa at that time made tentative arrangements with the defendants for further purchases of narcotic drugs, and Government agents made such purchases on four occasions during March and April 1962.

Defendants admitted the commission of the substantive offenses. Their sole defense was entrapment. They asserted that they were induced to violate the law by the persistent and plaintive importunities of their erstwhile friend, Joseph Flores.

Briefly, Dr. Clarke testified that he had known Flores for about ten years, that Flores "is the brother of my wife's best friend, Martha." He stated that his relations with Flores over the years had been very close, that they were members of the same social group and had associated on terms of the most intimate friendship. He stated that Flores first broached the subject of narcotics to him about three years before the trial, and that on numerous occasions thereafter Flores solicited him to supply him with narcotics. Dr. Clarke stated that he had never engaged in illicit traffic in narcotics and that he had never intended to, but that he finally yielded to Flores' entreaties on the occasions testified by the Government's witnesses. Speaking of his introduction to Agent Ripa, Dr. Clarke testified (p. 383):

"He was introduced to me as a boyhood friend of Mr. Flores. They stated to me that they grew up together on 102nd Street in the vicinity of First and Second Avenue, and he introduced me to Mr. Ripa as—in other words, he intro-

duced Mr. Ripa to me as John, that is all he said, and what Mr. Ripa has related took place."

Dr. Johnson testified in similar vein. He stated that he first met Flores about seven or eight years before the trial and that they became close personal friends and mingled in the same social group with Dr. Clarke. He stated that early in the summer of 1961, Flores "called me aside and told me at that time that he was very broke and in need of money and wouldn't I sell him some narcotics. And I refused to do so." Thereafter, according to Dr. Johnson, Flores made repeated attempts to purchase narcotics from him, and, on at least one occasion, Flores stated he wanted narcotics "to help his Cuban friends." Dr. Johnson testified that he always withstood Flores' solicitations until the events forming the basis for the present charges.

If the defendants' testimony is to be accepted, they find themselves in the unhappy position of the petitioner in Spano v. New York, 360 U.S. 315, 323, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (1959):

"Petitioner was apparently unaware of John Gay's famous couplet:

" 'An open foe may prove a curse,
But a pretended friend is worse,'

and he yielded to his false friend's entreaties."

■ Flores was not produced at the trial and the Government had no answer on the issue of entrapment. Defendants' testimony presented enough for jury consideration, but they were not entitled to acquittal as a matter of law. We distinguish Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), where no question of credibility was involved. See United States v. Collier, 313 F.2d 157 (7th Cir. 1963).

■ In support of their motions for a new trial, defendants urge, inter alia, that the trial was unfair "because of the absence of the special employee, Joseph Flores." We think there is merit in this contention—in the circumstances of the case—and it will be

unnecessary therefore to consider other grounds.

Agent Cockerille testified that he sought out Flores in the first week of March 1962, and induced him to become a "special employee". He stated that he had information that Flores "was familiar with Dr. Clarke." Regarding Flores' part in "setting up" the commission of the first criminal occurrence, Cockerille testified (p. 222):

"Q Prior to your coming to Philadelphia on March 15, 1962, do I understand you correctly that Mr. Flores communicated with Drs. Clarke and Johnson at your request to set up a meeting?

"A Yes, sir.

"Q And were you present when he had any of those previous whether telephone or other conversations with the doctors for the purpose of arranging?

"A No, sir, I don't believe I was.

"Q Do you know if anyone else was present when Flores made those arrangements?

"A No, I don't.

"Q So for all you know, those were made by Flores alone without any other witnesses present?

"A That's correct."

■ As we read the testimony, Flores was present on all but one of the five occasions when defendants made illegal sales. We think common fairness made it the Government's duty to produce Flores at the trial, or, failing that, to show that reasonable efforts to produce him were fruitless. It is hornbook law that normally all eye witnesses should be called, unless the prosecutor has them in Court and advises the defendant that he will not call them. Commonwealth v. Sarkis, 164 Pa.Super. 194, 199, 63 A.2d 360 (1949). Apart from other considerations, Flores was the only person, except for defendants themselves, who could have shed light on the issue of entrapment. According to Agent Cockerille, Flores ceased to be a special employee of the Bureau "immediately after this case that is on trial here today." (p. 201). The Government may not disown Flores and insist it is not responsible for his actions. Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). If Flores had been in Court, as he should have been, if available, we might well have ordered the Government to call him, as would have been our right. 23 C.J.S. Criminal Law § 1017, p. 1097.

■ The Government, in our view, did not show reasonable efforts to produce Flores at the trial. Agent Cockerille testified that on April 9, 1963, he was given a subpoena to serve on Flores, and that he tried to locate Flores by "first calling a telephone number that I had for his residence, and assumed residence". Cockerille "estimated" that he made three or four telephone calls to his "assumed residence", stated that he received no response, and admitted that he never went there or made any inquiry in the neighborhood concerning Flores' possible whereabouts. Cockerille stated that he made several trips to a bar where he knew Flores had worked, but failed to find him; that he inquired of the assistant bartender about Flores, but received "no help whatsoever". Cockerille's entire effort to subpoena Flores is summed up in his cross-examination (p. 345):

"Q You say you never got any answer at the number that you assume was his home?

"A That's correct.

"Q And did you ever go there and—

"A No, sir, I didn't.

"Q Did you ever inquire of anyone else who lived there or in that neighborhood?

"A No, sir, I didn't.

"Q Besides the query of the assistant bartender, did you inquire of anyone else in that bar?

"A No, sir. The bartender was the only person that I saw on duty then.

"Q What is his name?

"A I don't know.

"Q What does he look like?

"A He is a heavy-set dark-skinned Negro.

"Q Approximate weight?

"A Approximately five foot ten, I'd say 200, 215 pounds.

"Q He is the only one you inquired of?

"A That's correct."

Candor compels us to note that Agent Cockerille seems to have experienced little difficulty in locating Flores when he needed his services as a "special employee" a year earlier.

We were advised that there was a pre-trial meeting among Government counsel and witnesses in this case on April 9, 1963, at which Flores was not present. Cockerille testified that he spoke to Flores over the telephone several days before the meeting, and that Flores then stated he was still employed "at the bar". He admitted that, although he knew that Flores might be needed as a witness at the forthcoming trial, he made no inquiry concerning Flores' residence.

 We need not recount other last-minute and futile efforts, by both the Government and the defense, to locate Flores and bring him into Court. It suffices to say that, in the circumstances of the case, we think the Government should have made an earlier and more painstaking effort to produce this important witness at the trial. The Government which prosecutes an accused has the duty as well to see that justice is done. Jencks v. United States, 353 U.S. 657, 671, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

The missing Flores was, in our view, a key figure in this prosecution, and it was the Government's duty to expend every reasonable effort to produce him at trial. His absence, without satisfactory explanation, makes necessary the grant of a new trial. "All competent evidence tending toward ascertainment of the truth should be produced and the court must take such action as will tend to bring before it such evidence." 23 C.J.S. Criminal Law § 1028, p. 1118.

The nature and importance of the case will brook no unnecessary delay, and we shall therefore order it to be called for trial on September 9, 1963, with directions to the Government forthwith to issue and serve its process for Flores' appearance at the trial.

### ORDER

Now, August 1st, 1963, it is ordered that:

1. Defendants' motions for judgment of acquittal be, and they are, denied.

2. Defendants' motions for a new trial be, and they are, granted.

3. This case is ordered down for trial on September 9, 1963, at 10 A.M.

4. The Government shall forthwith issue and make reasonable efforts to serve necessary process for the appearance of Joseph Flores at the trial.