**UNITED STATES of America**
**v.**
**Robert Otha JONES, Appellant.**
**No. 73–1844.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1974.

Decided Feb. 20, 1974.

Robert E. J. Curran, U. S. Atty., Joseph M. Fioravanti, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Harry E. Tischler, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The life of a trial lawyer is a hectic one at best, and when defense counsel in a criminal case is required to try the case at the same time that efforts must be made to locate a missing witness or secure important information, duodenal lesions may result. More importantly, when prosecutorial errors lead to unsuc-cessful last minute scurrying by the defendant's lawyer, basic rights may be impaired. We approach this case with that consideration in mind.

The defendant Robert Jones was convicted of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The offense stemmed from negotiations for the sale of heroin which had been arranged by and conducted through a government informer who did not testify at the trial.

The prosecution presented its case through two agents of the Bureau of Narcotics and Dangerous Drugs. The testimony of these men revealed that the informant, acting on behalf of Agent Brown and another agent, made the necessary arrangements for them to meet with defendant Jones on August 26, 1971. On that evening the agents and informant sat at the bar of the Wanda Inn in Philadelphia, Pennsylvania and were soon joined by the defendant. After some discussion, Agent Brown agreed to buy an ounce and a half of heroin if it could be "cut" five times. He refused to make any payment until he was given the opportunity to test a sample.

After stating that he had to make a phone call, Jones left the Inn and returned in about ten minutes to where the agent was seated. The defendant said that the sample would be arriving in about fifteen minutes and again left the bar.

When he re-entered some time later, the defendant seated himself on the opposite side of the oval shaped bar and called the informant over. The two conversed, and Brown testified that he then observed the defendant and the informer move their hands under the bar. Because of the obstruction of the bar and the dim lighting in the Inn, the agent could not see any objects being transferred.

The Informant then walked around the bar to Brown and gave him two glassine envelopes containing heroin. After being summoned by the agent, the defendant came over to Brown, and in

response to his feigned confusion, Jones pointed to one of the envelopes saying it was ready for the "street" and to the other saying that it could be "cut." The defendant then gave Brown a telephone number which was to be used to make further arrangements for the purchase of heroin.

There is nothing in the record to indicate that the informant had been searched before the meeting took place, an omission which has some bearing on the defense claim that the missing testimony might be very important.

The defendant was arrested on December 22, 1971, some four months later, and charged with possession, distribution, and possession with intent to distribute heroin. After the district court dismissed the simple possession count for reasons not shown on the record,[1] the jury returned a verdict of guilty of possession with intent to distribute and not guilty to the count of distribution. Defendant's motions for a new trial and for acquittal were denied.

The evidence of guilt is hardly overwhelming, and although we recognize that constructive possession may be be shown by circumstantial evidence, United States v. Crippen, 459 F.2d 1387 (3rd Cir. 1972), it is necessary also that the government surmount the hurdle posed by United States v. Pratt, 429 F. 2d 690 (3rd Cir. 1970). Since a new trial must be had, however, we do not pass upon those issues here.

The paucity of the government's evidence does demonstrate the importance of the informant's knowledge and underlines our concern with the fact that the prosecution did not make him available for trial.

While defense counsel was advised at a pretrial conference that an informer was in the case, no disclosure of the name was made at that time in accordance with the policy of the Bureau of Narcotics. It was not until after testimony had commenced that the Assistant United States Attorney conceded to the trial judge that the name of the informer should be revealed to the defense.

We are well aware of the very practical problems connected with premature disclosure and do not wish to be understood as being unduly critical of the government's conduct in this particular.[2] The difficulty here is that defense counsel was not told until July 31, 1972, the day on which the jury was selected, that the government did not intend to call the informant as a witness. Furthermore, it was not until this day that the case agent (not Brown) made a telephone call to the informant's residence in an effort to learn of his whereabouts. The call was not productive, and on the following day (when testimony actually commenced in the courtroom) two agents were dispatched to the informant's presumed residence and later to his place of employment. Neighbors indicated that he had not been in the residence for two or three months, and the employer stated that the informant had been discharged some four months previously.

The able trial judge found that the government had made reasonable efforts to make the witness available to the defense, and we do not find error in that determination as applicable to the period July 31–August 1, 1972, the days of trial. *Cf.* United States v. Clarke, 220 F.Supp. 905 (E.D.Pa.1963). But here, more was required.

---

1. The docket shows that Count III was dismissed on motion of the government. However, there is nothing in the trial transcript which explains the reason for this action or whether it was with the consent of the defendant. While on appeal, Jones contends that dismissal of the count of simple possession requires similar treatment for the charge of possession with intent to distrib-ute, the point was not raised in the trial court. We do not have sufficient information to pass on the defendant's contention here, but it may be raised in the district court where this case will be remanded for a new trial.

2. See United States v. Day, 384 F.2d 464 (3rd Cir. 1967).

The case agent admitted that in the preceding two months he had had no response from his other sources when he asked them of the whereabouts of the informer. Thus, the Bureau knew more than two months before the trial date that there might be some difficulty in locating and producing the witness but took no steps to find him other than making casual inquiries of other informants. It was not until the trial had commenced that serious efforts were made, but obviously, it was then too late to make a thorough search.

To further compound the problems of the defense, the case agent at one point in his testimony gave the informant's address as 2908 "West Montgomery" Street. On another occasion a corrected portion of the transcript shows that the agent referred to the address as 2829 "Westmont" Street. Apparently both defense counsel and the court reporter (originally, at least) thought that the second reference was also to "West Montgomery." A post trial affidavit filed by the defense was to the effect that there was no such address in Philadelphia as 2908 West Montgomery and residents at 2829 West Montgomery had never known the informant to live there.

It is apparent that confusion could arise in the use of the two not dissimilar street names, particularly if abbreviations were used by counsel and the court reporter in making notes during the trial. There is nothing to indicate that the failure of communication was other than the result of inadvertence, but the additional burden imposed upon the defense in its literally last minute attempts to locate the witness is obvious.

At another point in the trial, the case agent provided counsel with information as to the informant's prior criminal record and cases pending against him at the time of the incident at the Wanda Inn. The Assistant United States Attorney made it quite clear that the government did not warrant that the record was complete. Nevertheless, it was read to the jury in the form of the stipulation.

After trial the defense was able to verify that the information was in fact incomplete, particularly as to a second pending narcotics charge against the informer in August of 1971. Again, we do not find any impropriety on the part of the prosecution, but nevertheless, there was some detriment to the defense as a result of the lack of thorough investigation by the government. When the name of the informant was not disclosed to defense counsel until the last day of trial, it was not realistic to expect him to be able to verify the government's information or make an independent check of criminal records at that late hour.

 Whether an informant's identity should be disclosed depends on the circumstances of each case and requires a balancing of the public's right to the flow of information against the requirements of providing a fair trial to the defendant. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). If for legitimate reasons, the government decides not to identify the informant in advance of trial, then absent special circumstances, it must take reasonable steps to have him available when the case is called, should a ruling in favor of disclosure be made. United States v. Leon, 487 F.2d 389 (9th Cir. 1973); United States v. Barnes, 486 F. 2d 776 (8th Cir. 1973); Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir. 1965); United States v. D'Angiolillo, 340 F.2d 453 (2d Cir. 1965); United States v. Clarke, supra. In this case the failure of the government to undertake a serious search for the informant in advance of the date set for trial has not been explained, and hence in the circumstances here we do not consider that the obligation to produce the witness has been met.

 We do not hold that any one of the unfortunate trial incidents, standing alone, was so prejudicial as to require a new trial, but the accumulation of mishaps so hampered the defense that fairness requires a new trial. United States v. Moore, 446 F.2d 448 (3rd Cir. 1971)

and United States v. Jackson, 384 F.2d 825 (3rd Cir. 1967), cert. denied 392 U. S. 932, 88 S.Ct. 2292, 20 L.Ed.2d 1390, are distinguishable on that basis and are not inconsistent with our decision here.

We know that to be successful in the fight against unlawful narcotics traffic, the agents of the Bureau of Narcotics must rely extensively upon the use of informants. It is no secret either that often these informants are not pillars of the community and are most reluctant to make themselves available for testimony in court. Nonetheless, the burdens we impose upon the government officers are justified by the necessity of preserving the integrity of the trial process. The invaluable contribution made to society by the difficult and dangerous work of the narcotics agent cannot be diluted by a conviction obtained by other than a fair trial.

The judgment of the district court will be reversed and a new trial will be granted.