UNITED STATES of America ex rel.
Levi JONES, Institutional
Number, H–6447,

v.

Joseph R. BRIERLEY, Superintendent,
Eastern State Correctional Institu-
tion, Philadelphia, Pennsylvania.

Misc. No. 3610.

United States District Court
E. D. Pennsylvania.

Nov. 17, 1967.

———◆———

John J. Cannon, Court-appointed, Philadelphia, Pa., for relator.

Vram Nedurian, Jr., Newtown Square, Pa., for respondent.

OPINION

JOSEPH S. LORD, III, District Judge.

Relator is presently serving a 5–10 year sentence for his participation in a robbery in Delaware County on March 12, 1963. He was convicted of this offense by the Delaware County court on June 23, 1964. At the same trial he was also convicted for his part in a burglary

on March 31, 1963 and was given a sentence of the same duration to be served consecutive to his robbery sentence. Relator now seeks a writ of habeas corpus.[1]

█ Since two of the claims depend solely on the "historic facts," it was mandatory that we grant a hearing in light of the less than full hearing that relator was given in his proceedings in the State courts.[2]

█ Relator first alleges that he was not informed of his right to appeal or of his right to have counsel on appeal and therefore failed to perfect a timely appeal from his State court conviction. At the outset of the hearing the respondent admitted this to be true and conceded, as he must,[3] that the relator should be allowed to file a timely appeal *nunc pro tunc*. We, however, proceeded with our inquiry into the other allegations since the State courts had already passed on these questions in the relator's collateral proceedings there.

### 1. USE OF ALLEGED INVOLUNTARY CONFESSIONS.

Relator was arrested on October 21, 1963 at about 10:00 a. m. by three Philadelphia detectives while he was at his construction job in Delaware County. This arrest was not for the crimes resulting in the Delaware County convictions now under attack; it was for a series of crimes committed in Philadelphia County. After short stops at the Delaware County police station, and at

relator's apartment where, pursuant to his request, he was given the opportunity to change his clothes, the relator was driven to the station house at 55th & Pine Streets in Philadelphia. It is not exactly clear as to what transpired during this ride but, as best we can discern, it appears that one of the Philadelphia detectives outlined to relator their case against him.[4] They arrived at the station house about noon and, before any questioning, relator was given lunch and permitted to speak with his wife who had received the note relator had left for her at their appartment. During part of this period relator was handcuffed to the window sill. The reason for this appears to be solely precautionary in that the station house did not have adequate facilities available for detainment.

At approximately 1:00 p. m. the detectives confronted relator with the confessions of one Frank Demanskis and one Robert Ray which admitted their complicity in the Philadelphia crimes and also implicated relator. These confessions also implicated relator in the two Delaware County crimes. Relator had previously been advised orally of his right to remain silent but not of his right to counsel. There is no showing, however, that he ever requested counsel.

Upon being confronted with the confessions of Demanskis and Ray, relator expressed an immediate desire to "clear his chest" and he confessed to both the Philadelphia crimes and Delaware County crimes.[5] We can infer no coercion

---

1. In his petition relator attacks both his convictions. Since consecutive sentences were imposed he has not yet started serving his conviction for the March 31 crime. Thus, he attempts to attack a conviction, the sentence for which has not begun. Normally this is not permissible but here, from the nature of his claims, his attacks on the convictions succeed or fail together. Therefore, the issuance of the writ will result in his immediate release from custody.

2. Townsend v. Sain. 372 U.S. 393, 83 S. Ct. 745, 9 L.Ed.2d 770 (1963).

3. See Wynn v. Page, 369 F.2d 930 (C.A. 10, 1966).

4. As is true in many proceedings of this nature there are conflicting claims as to what occurred. Here, for instance, relator claims that one of the detectives repeatedly stated that "he wanted to work him [the relator] over." We find this claim to be without substance.

5. He first orally confessed and then dictated a confession which was typed verbatim and then signed by the relator.

from the sudden desire to confess. There is a good explanation. Relator, during the course of the March 31 crime, had shot a watchman; and he wanted it understood that this was in no way intentional. Thus, after seeing the confessions of the other participants, he knew that the State had fairly substantial evidence with which to convict him and thus it would be useless to deny his participation. He took what he considered was the wiser course and admitted his participation but denied that the shooting was intentional. Before making this decision the police, in addition to advising him of his right to remain silent, also advised him that anything he said might be used against him or in favor of him.

The next day relator, after being brought before a magistrate, was transferred to Holmesburg County Prison. He arrived shortly before lunch and after lunch was met by three Delaware County police officers to whom he dictated two confessions, one for the March 12 crime and the other for the March 31 crime. This process lasted about one hour. It is unclear whether, at this time, the relator was informed of any of his constitutional rights.

During this entire period there is no showing that relator in any way suffered from ill health, fatigue or any other factor that would affect his normal mental process. Nor is there any showing that his ordinary mental prowess is in any way less than average.

The charges arising from the two Delaware County crimes were consolidated into one trial which commenced on June 22, 1964. At that trial one of the Philadelphia detectives testified as to that part of the confession pertaining to the Delaware County crimes.[6] Also admitted into evidence were the two signed confessions that had been dictated to the Delaware County police officers at Holmesburg on October 22.[7]

Relator's trial began on June 22, 1964. Hence, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which applies only to cases "in which trial began *after* June 22, 1964," is not applicable.[8] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is not retroactive. Nonetheless, the "case law on coerced confessions is [still] available," Johnson v. State of New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966). We have found as a fact that the Philadelphia police warned relator of his right to remain silent and that anything he said could be used against him. And though the Delaware County detectives may have given no such warnings, we find no evidence of involuntariness from this fact or from any of the other circumstances.

■ Here, it could not conceivably be said that relator was questioned extensively. He was with the police but twice, and on both occasions for relatively short periods of time. There is no showing that any physical or mental pressure was used to extract the confessions, nor is there any showing that the relator is of such intelligence that he would not have been able to comprehend the circumstances.[9] In short, we find a total ab-

---

6. The signed confession given at the Philadelphia police station was not admitted into evidence since it also contained relator's confession to the Philadelphia crimes.

7. Relator also alleges that he never made any confessions and all testimony or evidence of a confession having been made is untrue. We do not find this to be the case.

8. In addition, one of the elements in the "precise" holding of Escobedo was that "the suspect has requested and been denied an opportunity to consult with his lawyer," Johnson v. State of New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 1781, 16 L.Ed.2d 882 (1966), a factor which is not present here.

9. In fact there is testimony to the effect that relator had said that he knew all his rights and the police could not tell him anything he did not already know.

sence of factors that generally have been stressed in determining whether a confession was given voluntarily. We hold that the confessions were voluntary.

## 2. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Relator contends that, by virtue of the "ineffective assistance" of his counsel, he was denied his "right" to counsel under the Sixth Amendment. The main thrust of his allegation is that his trial counsel, Robert L. Pinto, Esquire( hereinafter "counsel") failed to use more than minimal efforts in trying to contact his alibi witnesses, the result being that they did not appear at his trial. This is true. Counsel, after exerting only minimal efforts in this direction, abandoned any further attempts at locating these people.

These facts are undisputed:

Relator's counsel, the head of the Voluntary Defender staff in Delaware County, spoke with relator several times before trial. At one of the early meetings relator gave him two groups of names. One group consisted of alibi witnesses for the March 12 crimes (hereinafter "March 12 witnesses") and the other group was for the March 31 crime (hereinafter "March 31 witnesses"). Counsel wrote these names down under two separate headings, March 12 and March 31. No name appeared in both groups. The dispute arises solely from the groupings of the two sets of names.

At the hearing, counsel testified from the notes which he had taken during the meeting at which relator had given him the names. In this testimony, he divided the names into two groups—the March 12 witnesses and the March 31 witnesses —which is the way they were broken down in his notes. If his testimony is correct as to the way relator had divided the names, then it is undisputed that the March 12 witnesses would have placed

relator in Chester and the March 31 witnesses would place him in Philadelphia.

Relator, however, claims now, as he did at his trial, that he was in Philadelphia on March 12 and in Chester on March 31. Furthermore, he claims to have given counsel the names of persons who would have testified accordingly. In this proceeding the relator gave the court the names of the people that he had allegedly given his counsel. While in some instances the names were the same as those that counsel had, in no instance were they in the same group.

There is, then, this sharp conflict between Jones and Pinto:

Pinto testified that Jones gave him the Chester witnesses for March 12 and the Philadelphia witnesses for March 31.

Jones has them reversed.

Significantly enough, though, Jones mentioned at the hearing several witnesses whose names appeared nowhere in Pinto's notes, including those persons he claimed were his two "key" witnesses. These inconsistencies are, to us, suggestive of hindsight. In any event, the best that can be said for the relator is that the evidence is in a state of equipoise. We have not been persuaded by relator's evidence and we must conclude that he has not sustained his burden of proof. United States ex rel. Marshall v. Wilkins, 338 F.2d 404 (C.A. 2, 1964).

Having concluded that relator has not established erroneous grouping by counsel of the alibi witnesses, it becomes plain that Pinto's actions were fully justified.

It appears that several days after receiving the names from Jones, counsel was visited by relator's wife who stated that she was with relator on the night of March 12 in Philadelphia and on March 31 in Chester and desired to testify accordingly. Relator obviously corroborated this story since his testimony at trial was in substantial accord with his wife's.[10] Under these circumstances

---

10. By this we mean that at trial relator placed himself in Philadelphia on the night of March 12 and in Chester on the night of March 31. In some respects, not relevant here, his testimony was not in complete accord with his wife's

counsel abandoned any further attempt to contact the persons whose names relator had given him since they would not be able to support the relator's alibi but would contradict it.

■ We fail to see how in these circumstances counsel's conduct deprived relator of "effective assistance of counsel." Here it is not as if counsel failed to present a significant defense for the relator,[11] but instead presented the only available defense he had. Any weakness in it was not the fault of counsel's but entirely brought about through either relator's mistake or his untruthfulness. Whatever the reason we do not find that relator was denied effective assistance of counsel.

Relator also alleges other grounds which he claims establish that he had "ineffective assistance of counsel." After consideration of these claims we find them to be without merit.

### 3. CONSOLIDATION OF INDICTMENTS FOR TRIAL

Relator's final allegation presents a somewhat novel question for a habeas corpus proceeding. He claims that the consolidation[12] of the charges arising from the March 12 and March 31 crimes into one trial, under the circumstances of this case, so prejudiced him as to deprive him of his right to a fair trial.

■■ Generally, the consolidation for trial of two or more indictments is within the discretion of the trial judge, reviewable on direct appeal if the defendant has been prejudiced. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); Commonwealth v. Tracey, 137 Pa.Super. 221, 8 A.2d 622 (1939). Furthermore, " * * * the commission or occurrence of such errors or irregularities

merely involve issues relating to state law and procedure rather than to federal constitutional issues and are justiciable only on direct appeal rather than on federal habeas corpus proceedings. The proposition has long been established that habeas corpus cannot be utilized as a substitute for appeal or as a writ of error to review such errors or irregularities. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). It is only under circumstances impugning fundamental fairness or infringing upon specific constitutional protections that federal issues are presented. *. * * " Application of Stecker, 271 F.Supp. 406, 409 (N.J.1966), aff'd, 381 F.2d 379 (C.A. 3, 1967), cert. denied, 389 U.S. 929, 88 S.Ct. 290, 19 L.Ed.2d 280 (U.S. Nov. 7, 1967). We have been unable to discover any case which has considered whether or under what circumstances consolidation violates constitutional guarantees. It is true that in *Drew*, supra, the Court on direct appeal held that consolidation constituted reversible prejudicial error, but the *Drew* court did not, nor did it need to reach any constitutional question.

The absence of precedents, of course, neither bars consideration of relator's claim nor determines its outcome. However, in view of the somewhat murky status of the State procedure, we think that the considerations that follow dictate that we should withhold our hand.

Relator, as previously stated, had been denied his right to file a timely appeal from his State court conviction. It is the law in Pennsylvania that improper consolidation is reviewable on direct appeal and not in a collateral proceeding. Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 446, 71 A.2d 799 (1950). Thus,

---

11. Compare Jones v. Huff, 80 U.S.App. D.C. 254, 152 F.2d 14 (1945) where no defense was presented.

12. Consolidation here is used when referring to separate charges being brought at one trial against one defendant and not the joinder of several defendants in one trial.

relator, under State law, would normally have lost his right to raise the question. However, in his State habeas proceeding, the court devoted a brief portion of its opinion to this issue and held that consolidation was proper. On review the Superior Court affirmed without an opinion. Commonwealth ex rel. Jones v. Rundle, 206 Pa.Super. 734, 213 A.2d 384 (1965). We cannot know whether the action of the Superior Court was because it agreed with the lower court that consolidation was proper or because this was not a proper question to be raised in a collateral proceeding.

▮▮ Relator will be given the right to perfect a direct appeal. On that appeal, the consolidation question can be considered, as a matter of State law. This is not a question of exhaustion under 28 U.S.C. Sec. 2254, for the State has already had the opportunity to pass on the constitutional question. Rather, it is a recognition of the principle that a federal court should not decide a constitutional question, hitherto undetermined, when the disposition of the case may be accomplished by the State on a purely State ground.

We wish to express our gratitude to John J. Cannon, Esquire, a member of the Philadelphia Bar Association, who volunteered his services and who was both dedicated and able in his representation of the relator in the present proceeding.

For the foregoing reasons, we enter the following

### ORDER

And now, this 17th day of November 1967, it is ordered that the writ of habeas corpus is granted unless the Commonwealth of Pennsylvania shall grant relator leave to perfect a direct appeal within thirty (30) days from his convictions in the Court of Quarter Sessions of Delaware County, Bills Nos. 549, 550, 551, 552, 553, 557, 559 and 560, December Sessions, 1963.