Commonwealth *v.* Walak, Appellant.

Argued April 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Alfred B. Bell,* Assistant Public Defender, with him *Albert C. Gaudio,* Assistant Public Defender, and *Dante G. Bertani,* Public Defender, for appellant.

*Patrick H. Mahady,* Assistant District Attorney, with him *Albert M. Nichols,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 21, 1974:

The instant appeal from a drug conviction raises two questions worthy of discussion: (1) the trial court erred when it refused to compel the Commonwealth to produce an eyewitness to the alleged crime; and, (2) that the Commonwealth, in violation of *Commonwealth v. Kurtz,*[1] failed to communicate to the Court that the paid informant had received leniency on pending charges as a result of cooperation with the authorities in apprehending the appellant.

On September 18, 1973, the appellant was tried by a jury and found guilty of violations of The Drug, Device and Cosmetic Act. The testimony may be sum-

---

[1] 219 Pa. Superior Ct. 1, 280 A. 2d 410 (1971).

marized as follows: Officer Steven Todoric testified that on December 22, 1972, he was introduced to appellant by a George Sam, a paid informant for the Bureau of Drug Control. The three men entered Todoric's car whereupon the appellant sold Todoric a bag containing one pound of marijuana for $100.00. On January 5, 1973, Ernest Fullerton, an agent for the Bureau of Drug Control, met George Sam who introduced Fullerton to Walak, and accompanied the two to the agent's car. Fullerton then gave the appellant $350.00 in exchange for a bag containing marijuana.

On April 10, 1973, defense counsel filed a bill of particulars asking specifically for the names and addresses of any agents or any participants to the alleged criminal action. The District Attorney's Office replied with a referral to Pa. R. Crim. P. 310, which permits the pretrial discovery of "any written confessions and written statements made by the defendant . . .", but which precludes "other discovery or inspection . . . except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons." Prior to the selection of the jury on the date of trial, counsel renewed his request through oral motion asking that the Commonwealth furnish the whereabouts of George Sam,[2] or in the alternative, that it have George Sam present in Court during the trial. Defendant's motion was denied as being untimely.[3]

---

[2] On page 4 of the trial transcript, we are made aware of defense counsel's knowledge of the *identity* of the informant. Under Pa. R. Crim. P. 304, which provides that "[a]ll pretrial applications for relief shall be in writing", oral requests would be in a technically improper form. Although the guilt determination process had not begun, and a jury had not as yet been selected, the trial had begun, and a motion made at such time was, in our opinion, a trial matter, and Rule 304 inapplicable.

[3] Commonwealth argues that the defense was not entitled to the names of eyewitnesses to the alleged crimes as a subject of pre-

George Sam was not called as a Commonwealth witness, despite the fact that he was an eyewitness to both alleged transactions, and would have offered the only "impartial" testimony at trial.[4] During the cross-examination of narcotics agent Rause, testimony revealed the probable whereabouts of George Sam: "Q. (Defense counsel): Do you know where George Sam is today? A. (Pause). No, I don't. Q. Do you know how to contact him? A. If I attempted to contact him, I would attempt to contact him at the home of his mother at Herminie, Pa." Having obtained this lead, defense counsel did not ask for a continuance, nor is there any indication in the appellant's brief or in the record that demonstrates an attempt by the defense to locate Mr. Sam.

Appellant contends that the lower court erred in denying his application for the whereabouts of a key

---

trial discovery. Pa. R. Crim. P. 310. Five months prior to trial, defense counsel had made a similar request. If the district attorney's reason for opposing appellant's motion on the day of trial was because of timeliness, i.e., that "no pretrial application shall be considered if made less than ten days before trial" (Pa. R. Crim. P. 305), Commonwealth's position should have been recognized as contradictory to its previous response.

[4] In a United States Supreme Court case, *Roviaro v. United States*, 353 U.S. 53 (1957), a Majority of the Court reversed a conviction on drug charges, where appellant was denied knowledge of the *identity* of the informant, who, in that case, was the only other direct participant in the transaction. In *Carter, infra*, our Supreme Court relied heavily on *Roviaro*, coming to the same conclusion despite the fact that the informant-eyewitness to the drug transaction was not the sole participant. As the Court said at 61: "Elemental to our concept of fairness, as well as that embodied in the federal constitution, is the awareness that the testimonial perspective of police officers is conditioned by the 'often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948). This awareness makes us reluctant to permit the establishment of facts crucial to criminal guilt solely by police testimony based on a single observation *where testimony from a more disinterested source is available*."

eyewitness to the alleged crimes. Appellant concedes that the general rule is that the Commonwealth is not compelled to call to the stand all available eyewitnesses. *Commonwealth v. Carter,* 427 Pa. 53, 233 A. 2d 284 (1967) ; *Commonwealth v. Garnett,* 204 Pa. Superior Ct. 113, 203 A. 2d 328 (1964). However, he argues that the trial court violated the holding in *Carter* which expressly stated that "when the Commonwealth does not call to the stand such eyewitnesses, it must apprise the defense of the witness' name and whereabouts at trial unless the defense is able or should have been able to procure the witness unaided." 427 Pa. at 55.

At the time of defense counsel's motion, the trial court was informed that appellant had no knowledge as to the whereabouts of George Sam. Despite the fact that the jury had not been selected, the trial had begun. Under *Carter,* the defendant was entitled to information concerning the identity or whereabouts of the only "disinterested" eyewitness, and Commonwealth's failure to disclose this matter was error. We must decide, however, whether disclosure of the "probable" location of George Sam during the course of the trial rendered this error "harmless".

Upon receiving the information he was seeking in his previous motion, defense counsel had the opportunity to ask for a continuance. Had such a request been made and denied we would be inclined to reverse appellant's conviction.[5]  On the state of the record, how-

[5] We are guided by the discussion in *Roviaro* emphasizing the highly material and relevant nature of testimony given by an informant-eyewitness. "Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent

ever, we are unable to determine whether counsel's failure to ask for a continuance was prompted by a justifiable tactical or strategic reason. Such a determination is properly a subject of a collateral proceeding. See, e.g., *United States ex rel. Jones v. Brierley*, 276 F. Supp. 567 (1967) ; *Commonwealth v. Allen*, 428 Pa. 113, 237 A. 2d 201 (1968). Since the requested information was made available to the defense during the course of the trial, the court's refusal to compel the Commonwealth to make the whereabouts of George Sam, an eyewitness, known to the defense at the opening of the trial constituted "harmless error".

Appellant's second contention is that the Commonwealth committed what has become known as the "Kurtz error". Through examination of a Westmoreland County detective Donald Raneri, defense counsel was able to discover that in February of 1972, the paid informant, George Sam, had had criminal charges made against him. Independent investigation disclosed that the charges were nolle prossed following his cooperation with the state agents in their contacts with the appellant.

In *Commonwealth v. Kurtz, supra,* our Court held that the Commonwealth was under a duty to bring to the attention of the trier-of-fact the existence of a

part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package. . . . The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." 353 U.S. at 64. While the trial court may be said to have broad discretion in deciding the propriety of a continuance for procuring a material witness to a case, e.g., *Commonwealth v. Gross*, 1 Ashm. 281 (1831) ; *Parkin v. Philadelphia Rapid Transit Co.*, 300 Pa. 569, 151 A. 362 (1930), we believe, in the instant case, refusal of a continuance would have constituted reversible error.

promise or agreement of leniency for an accomplice who is testifying for the prosecution, whenever the defense inquires into the matter. In *Kurtz,* the witness, a co-defendant, had testified against the appellant. This Court rested its holding on the fact that because said witness testified, "[t]he jury was entitled to know that [promise or agreement of leniency] as affecting [their] credibility." 219 Pa. Superior Ct. at 3.

In the instant case, George Sam was not a co-defendant. He was admittedly acting as an agent for the police, and could not, therefore, be considered an accomplice. In addition, Sam did not testify against the appellant, and his credibility was not at issue. Our decision in *Kurtz* is not applicable to the instant case, and appellant may not prevail on this ground.

Accordingly, we affirm the judgment of sentence.[6]

---

[6] We add this particular footnote to the instant proceedings. On the state of the Rules of Criminal Procedure, it is evident that the defendant was not entitled to pretrial discovery on the identity or whereabouts of eyewitnesses. Pa. R. Crim. P. 310. Rule 310, except upon a showing of "exceptional circumstances", limits such discovery to statements or confessions made by the defendant. There is a significant movement, however, permitting the parties to a criminal case to unravel the mystery and secrets of a case prior to trial. A number of United States Supreme Court cases have made inroads into this policy denying any discovery of Commonwealth's case on constitutional grounds. As early as 1959, the United States Supreme Court suggested that the right to advance notice of witnesses against one and their prior statements may be required by the Sixth Amendment and by due process. *Palermo v. United States,* 360 U.S. 343, 362-366 (1959). A number of states require by statute or rule that the accused be notified prior to trial of the witnesses to be called against him, usually by endorsement on the indictment or information. E.g., Fla. Stat. Ann. §906.29; *State v. Mitchell,* 310 P. 2d 1063 (Kan. 1957). A growing number of jurisdictions require that a witness' prior statements be made available to defense counsel at the time or after the witness testifies for possible impeachment purposes. Annot., 7 A.L.R. 3d 181 (1966). "Jenck's Act", 18 U.S.C. §3500. *Brady v. Maryland,* 373 U.S. 83, 87-88 (1963), established the constitutional requirement that the prosecution disclose

JACOBS, J., concurs in the result.

evidence "which, if made available, would tend to exculpate [the accused] or reduce the penalty. . . ." Finally, most recently, the United States Supreme Court held unconstitutional alibi notice rules or statutes which deny the accused reciprocal rights to receive notice of rebuttal witnesses. *Wardius v. Oregon*, 412 U.S. 470, 93 S. Ct. 2208 (1973). In so doing, the Court attacked the restrictive nature of most discovery rules in state jurisdictions, saying at 2211-2212: "Notice of alibi rules, now in use in a large and growing number of States, are based on the proposition that the ends of justice will be best served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. (Citations omitted.) The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in Williams, [399 U.S. 78 (1970)], nothing in the Due Process Clause precluded States from experimenting with systems of broad discovery designed to achieve these goals. 'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for [a rule], which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.' 399 U.S. at 82 (footnote omitted), 90 S. Ct. at 1896."

DISSENTING OPINION BY SPAETH, J.:

Appellant could have been given prior to trial the information the Commonwealth had on the whereabouts of the paid informant who was an eyewitness to the crime with which he was charged. Footnote 6 of the majority's opinion is incorrect. In *Commonwealth v. Pritchett*, 225 Pa. Superior Ct. 401, 312 A. 2d 434 (1973), this court held that Rule 310 does not bar pretrial disclosure of the name of an informant who was an eyewitness to a crime.

At the latest, appellant should have been given the information at the start of trial. The error that arose

from the Commonwealth's refusal to turn over the information at least by then cannot be characterized as harmless. The agent's answer was so qualified and general that to describe it as a "lead" is somewhat generous; in any event, it hardly "revealed the probable whereabouts" of the informant. In addition, considering the court's earlier rulings regarding disclosure of the informant's whereabouts, counsel had little reason to suppose that a request for a continuance would have been granted.