373 A.2d 118

COMMONWEALTH of Pennsylvania

v.

**Edward KISHBACH, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided Dec. 20, 1976.

Francis P. Burns, Assistant Public Defender, Wilkes-Barre, for appellant.

Thomas J. Glenn, Jr., Assistant District Attorney, and Patrick J. Toole, Jr., District Attorney, Wilkes-Barre, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction by a jury of delivery of a controlled substance.[1] Appellant raises one issue which warrants discussion herein; to wit, whether the lower court erred in refusing to grant a continuance during his trial when a Commonwealth witness disclosed the alias of an informant whom appellant claimed had entrapped him into making the illegal sale. We disagree that the court abused its discretion in denying the continuance and will affirm. The facts are as follows:

In November, 1974, the State Police were conducting undercover investigations of narcotics trafficking in Luzerne County and were relying heavily on entrees into the activities of the narcotics subculture provided by a paid informant, William Harrison. On November 15, 1974, Harrison arranged a meeting between undercover agent Richard Suda and Kathy Grazio, and Suda purchased some marijuana from her. Shortly after the sale had been consummated, Harrison arrived in an automobile driven by appellant. After Harrison introduced appellant to Suda, Suda and Grazio got into appellant's car and began driving aimlessly around Luzerne County. During the sojourn a pipe full of marijuana was passed around the car, and appellant disclosed that he had a bag in the front seat containing a quarter pound of Colombian marijuana, ten "hits" of morphine and one hundred "hits" of acid, all of which were for sale.[2] Subsequent-

1. The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(30) (Supp.1976), provides as follows:
"The following acts and the causing thereof within the Commonwealth are hereby [illegal]:
"Except as authorized by this act, the manufacture, *delivery, or possession with intent to* manufacture or *deliver*, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."

2. Although the point has not been alluded to, we note in passing that "possession with intent to deliver" is a crime equally as serious as actual delivery of a controlled substance. See note 1, supra. We have already established that possession of a large quantity of drugs supports an inference that they were possessed with the intent to

ly that evening the sale took place and, on January 6, 1975, appellant was arrested.

Although appellant knew Harrison's name and many of his favorite haunts, appellant's efforts to locate Harrison as a potential witness concerning an entrapment defense failed. Therefore, pursuant to Pa.R.Crim.P. 230 & 310, 19 P.S. Appendix (Supp.1976), appellant sought a bill of particulars and pre-trial discovery of Harrison's whereabouts. Immediately prior to trial a hearing was held on those motions, and the Commonwealth disclosed that it did not know Harrison's whereabouts and had not sought to locate him since the undercover investigation had terminated. The jury trial then began and the Commonwealth called Richard Suda as its first witness. On cross-examination Suda disclosed that he had known Harrison by an alias, Billy Dean. Appellant's counsel requested a continuance so that, armed with this new information, he could again attempt to locate Harrison. The request was denied, the trial proceeded to its conclusion, and the jury returned a verdict of guilty.

At the outset it should be noted that the question on this appeal has little, if anything, to do with the Commonwealth's duty to inform a defendant of the identity and whereabouts of a confidential informant. Purely and simply the question in the instant case is whether the lower court abused its discretion in refusing to grant a continuance. Measured by this standard, the court did not commit reversible error when it refused to grant appellant more time to find the elusive informant.

deliver. See, e. g., *Commonwealth v. Cubler,* 236 Pa.Super. 614, 346 A.2d 814 (1975). In the instant case, appellant possessed more than enough marijuana, morphine, and acid (presumably, LSD) to support an inference of intent to deliver beyond a reasonable doubt. Cf. The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(31) (Supp.1976). Hence, because there is no suggestion that Harrison had anything to do with appellant's possession of such a large quantity of drugs, even if the Commonwealth had conceded that appellant was entrapped into the actual delivery of the drugs to Officer Suda, the trial court would have erred had it directed a verdict for appellant in this case. Therefore, those contentions of appellant that he was entitled to a directed verdict are obviously without merit.

Prior to trial in the instant case, appellant not only knew the informant's real name, William Harrison, but he also knew the places which Harrison frequented. Appellant secured the services of a private investigator to ascertain Harrison's whereabouts so that he could be questioned, but this effort proved unavailing. The Commonwealth, according to the testimony of its agents, was similarly ignorant of where Harrison could be found.

At trial, appellant learned that Harrison sometimes used an alias, Billy Dean, and requested a continuance hoping that this bit of information would lead to the discovery of Harrison. The court, in our estimation, acted properly within the limits of its discretion in denying this request.

It is blackletter law that an appellate court may not reverse a trial court's denial of a continuance without a palpable and prejudicial abuse of discretion. *Commonwealth v. Warner*, 209 Pa.Super. 215, 225 A.2d 98 (1966), cert. den. 389 U.S. 986, 88 S.Ct. 477, 19 L.Ed.2d 479. See generally 24A C.J.S. Criminal Law § 1865, p. 710, n. 78. And, the rule has been applied with equal force when a witness is absent. *Id.* at p. 712. However, in this case the continuance was requested only in the hope that Harrison could then be found, and in the hope that his testimony would corroborate both the exculpatory testimony of Miss Grazio, who was called by the Commonwealth, and the testimony of appellant himself. In light of that, many factors may have influenced the court in determining that the interests of justice would not be served if a continuance were granted after the jury had begun to receive the evidence in this case. Among these considerations were the fact that, despite the revelation of Harrison's erstwhile alias, Harrison still might not be found; that, even if he were found, he would not be called to testify if his version of the transaction corroborated the Commonwealth's version; that, even if he did testify in appellant's behalf, he was a corrupt source who at most would only corroborate the testimony of Miss Grazio and appellant; that, even if the Commonwealth had not taken steps to assure Harrison's availability for

trial, there was no evidence of willful obfuscation of his whereabouts or identity by the Commonwealth; and, finally, as noted in footnote 2, supra, that, even if Harrison did testify that he cajoled appellant into selling the drugs to Suda, the Commonwealth would have had ample evidence of possession with intent to deliver.

In short, contrary to appellant's assertion, *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967) is not "controlling"; indeed, it is not even on point, because it concerns the non-disclosure of an informant's identity and whereabouts on the basis of the Commonwealth's limited privilege to preserve confidential sources of information. That question is not in this case. Properly conceived, the only question before us is whether the court below abused its discretion in denying a continuance. To reverse appellant's conviction herein because "it is possible," that Harrison *might* be located and *might* be called to testify as a *corroborating* witness would be clearly improper.

Judgment of sentence is affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge, dissenting:

Appellant was convicted by a jury of delivery of a controlled substance.[1] In this appeal he raises the following issues: (1) the lower court erred in denying a motion for a directed verdict of acquittal or in arrest of judgment, and (2) the lower court erred in denying a continuance.[2] I would

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, imd. effective. As amended October 26, 1972, P.L. 1048, No. 263, § 1, imd. effective; December 30, 1974, P.L. 1041, No. 340, § 1, imd. effective, 35 P.S. § 780–113(a)(30).

2. Appellant also raises the following issues: (1) the Commonwealth failed to maintain any information pertaining to the whereabouts of its paid informant (2) the Commonwealth failed to honor three subpoenas duces tecum and failed to move to quash the subpoenas (3) the Commonwealth failed to provide appellant with exculpatory evidence prior to trial. I would not reach these issues.

reverse the judgment of sentence and remand for a new trial.

In November 1974, William Harrison, a paid informant for the Pennsylvania State Police, arranged a meeting between State Trooper Richard Suda, an undercover agent, and one Kathy Grazio. On the night of November 15, 1974, Suda purchased some marijuana from Grazio at a prearranged location in West Hazleton, Luzerne County. A few minutes later, at approximately 11 p. m., Harrison and appellant arrived in appellant's car, and parked next to Grazio's car. After Harrison introduced appellant to Trooper Suda, Suda and Grazio entered appellant's car. The four then drove aimlessly for about 30 minutes during which time appellant sold marijuana, morphine, and LSD to Trooper Suda for $405.

Appellant was arrested on January 6, 1975, and charged with delivery of a controlled substance. In a pre-trial discovery motion, appellant requested the exact name and whereabouts of the informant because, although appellant and Harrison were acquainted, appellant did not know whether the name William Harrison was an alias and did not know the whereabouts of the informant. The Commonwealth, which is not claiming a privilege to withhold such information, responded that the exact name of the informant was William Harrison and that the Commonwealth did not know his whereabouts. Appellant intended to call the informant as a witness at trial to prove a defense of entrapment. On June 2, 1975, a pre-trial hearing was held on appellant's motion to quash the indictment, appellant's request for a bill of particulars and discovery. The Commonwealth repeated that it did not know the whereabouts of the informant and that his exact name was William Harrison. Appellant's counsel called two state police officers and the Chief County Detective of Luzerne County to determine whether they had made any effort to obtain and to keep an address or phone number for the informant or to locate him.

None had done so.[3]  Appellant's counsel further established that the informant was instrumental in 50 drug arrests in Luzerne County alone and that he was also involved in several arrests in Northampton and Monroe Counties.  Appellant then moved to dismiss the case based on the Commonwealth's failure to maintain an address or phone number where the informant could be reached.  The lower court denied the motion to dismiss.

That afternoon a jury was selected and the case proceeded to trial.  At trial, the Commonwealth called Trooper Suda as its first witness.  When asked the informant's name on direct examination, he stated that he knew the informant as Billy Dean.  At a side bar conference, appellant's counsel then moved for a mistrial or, in the alternative, for a continuance based upon this newly discovered evidence.  The trial court denied both motions.

After a jury verdict of guilty, appellant moved for a directed verdict of not guilty and in arrest of judgment. The court, en banc, denied these motions.

Appellant was sentenced to a minimum of one and one half to a maximum of four years imprisonment.  This appeal followed.

Appellant contends that the lower court erred in failing to direct a verdict of not guilty and to arrest judgment because appellant proved a defense of entrapment.

Appellant's defense of entrapment is governed by the Crimes Code, 18 Pa.C.S. § 313:[4]

"(a)  .  .  .  A public law enforcement official or a person acting in cooperation with such an official perpetrates an

---

**3.**  Officer Suda spoke to an undercover police officer from Bethlehem six weeks prior to the hearing to ask whether he had seen the informant.  Upon receiving a negative reply, he made no further inquiry.

Officer Suda also made the only attempt to keep track of the informant.  Suda had a phone number for Harrison.  However, Suda stated that Harrison had moved and Suda was not sure that the phone number was still correct.  The officer did not call the number to ascertain whether Harrison was still there.

**4.**  Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973.

entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by . . .

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) . . . a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. . . . "

The test for entrapment under the new Code is an objective one that evaluates the police conduct to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. Thus, to prove entrapment appellant must prove by a preponderance of the evidence that there was police misconduct and that the misconduct caused him to act. Further, the issue of entrapment is a question for the jury. *Commonwealth v. Berrigan*, 234 Pa.Super. 370, 343 A.2d 355 (1975).

In the instant case, the Commonwealth introduced competent evidence on the absence of an entrapment. Trooper Suda testified on direct that appellant initiated the transaction. At the same time, there was testimony by appellant and by Grazio that tended to show entrapment by the informant. Grazio testified on re-cross-examination that Harrison kept pushing the subject of the drug sale. She was unable to recall any of the conversation exactly and could not repeat any of it when asked on redirect. Appellant testified on direct that the informant owed him money and that he could get some of it back by selling drugs. Moreover, appellant stated that the informant kept asking him to sell the drugs and that he had planned and manipulated the entire sale. Nonetheless, appellant was unable to develop

completely his defense of entrapment due to the informant's failure to testify.[5]

Thus, although there was some evidence of inducement by the informant, it was for the jury to resolve the conflict in testimony and to conclude whether appellant had proven his defense by a preponderance of the evidence. However, my inquiry does not end here because appellant contends that the Commonwealth did not furnish the alias of a crucial witness to support his entrapment defense.

Appellant contends that the trial court should have granted a continuance when Trooper Suda testified that the informant used an alias so that appellant could locate the informant using the newly acquired information as to the informant's assumed identity.

In *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967), the Court addressed the issue of the government's privilege to withhold the name and whereabouts of an informant. The Court held that even when the government asserts this privilege the Court must balance the need for the governmental privilege to withhold the names and whereabouts of all material eyewitnesses against the need of the defendant for the testimony. The Court found that "whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 427 Pa. at 59, 233 A.2d at 286.[6] Thus, even when the privilege is asserted, it is not absolute.

5. Harrison's absence raised doubts for the jury as is evidenced by their question to the Judge: "Juror: And then we were kind of leary about Harrison, Juror: How come he wasn't brought in? By the COURT: I've explained that to you, and I think Mr. Burns, in his closing argument, told you about that. That's why we have juries."

6. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), a Majority of the Court reversed a conviction on drug charges, where appellant was denied knowledge of the identity of the informant, who, in that case, was the only other direct participant in the transaction. In *Carter*, 427 Pa. 53, 233 A.2d 284 (1967), our

In *Carter*, as in the instant case, the informant's testimony was essential to the defense. In *Carter*, the defense raised was that of erroneous identification. In holding that the Commonwealth must produce the name and whereabouts of the informant, the Court reaffirmed the basic Pennsylvania Rule that requires the prosecution to make the names and whereabouts of material eyewitnesses available to the defense. See also, *Commonwealth v. Sarkis*, 164 Pa.Super. 194, 63 A.2d 360 (1949). The Court focused on the fact that the testimony of the informant was essential to the defense and that the informant was a material eyewitness to the transaction.

The informant in the case at bar, William Harrison, was a material eyewitness to the transaction. He was instrumental in arranging the meeting between Officer Suda and appellant and he was present throughout the entire event. Further, based upon appellant's clear intention to establish an entrapment defense, Harrison's testimony was essential. Appellant himself tried to locate Harrison; he hired an investigator and alerted his attorney to places which Harrison was known to frequent.

In *Commonwealth v. Walak*, 228 Pa.Super. 404, 323 A.2d 886 (1974), defense counsel requested information concerning

Supreme Court relied heavily upon *Roviaro*, and concluded that the appellant was entitled to know the identity of the informer, despite the fact that the informant-eyewitness to the drug transaction was not the sole participant. In *Roviaro*, the Court emphasized the highly material and relevant nature of testimony given by an informant-eyewitness. "Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package . . . . . The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." 353 U.S at 64, 77 S.Ct. at 629.

the whereabouts of the Commonwealth's paid informant. His request was denied by the lower court. At trial, during the cross-examination of a narcotics agent, the agent revealed the probable whereabouts of the informant. Defense counsel failed to request a continuance. The Court held that "under *Carter* the defendant was entitled to information concerning the identity or whereabouts of the only 'disinterested' eyewitness, and Commonwealth's failure to disclose this matter was error." *Commonwealth v. Walak*, supra 228 Pa.Super. at 408, 323 A.2d at 889. In commenting upon defense counsel's failure to request a continuance when he learned of the probable whereabouts of the informant, the court said: "Had such a request been made and denied we would be inclined to reverse appellant's conviction. On the state of the record, however, we are unable to determine whether counsel's failure to ask for a continuance was prompted by a justifiable tactical or strategic reason." *Id.*, 228 Pa.Super. at 408, 323 A.2d at 889.

"It is within the discretion of the trial judge to grant continuances in the absence of material witnesses." *Commonwealth v. Gasiorowski*, 225 Pa.Super. 390, 393, 310 A.2d 343, 344 (1973). However, the lower court erred in the instant case in refusing appellant a continuance so that he could locate the informant using the newly acquired information as to the informant's alias.

I believe that *Walak* and *Carter* control the instant case. Appellant's counsel made every effort to locate the informant. If he had known that the informant was using the alias of Billy Dean, it is possible that appellant would have found him. When the officer's testimony revealed the use of an alias by the informant, the trial judge should have granted the requested continuance. The informant was an eyewitness and a material witness to the transaction. His testimony was potentially crucial to the appellant's entrapment defense. Although Kathy Grazio's testimony tended to show entrapment by the informant, her testimony was vague and unspecific. Only the informant himself could actually testify as to the events leading up to and during the transaction.

Because the lower court failed to grant the continuance requested by appellant, I would reverse the judgment of sentence and remand for a new trial.[7]

SPAETH, J., joins in this Dissenting Opinion.

7. With respect to the proposed requirement that the Commonwealth retain information on the whereabouts of its paid informants, I make one observation. It is the trend in the Federal Court decisions to require the Government to show reasonable efforts to produce an informant where special circumstances exist. Such circumstances exist when the informant is a material eyewitness to the transaction, when the defense of entrapment is raised and the informant is the only one who can shed light on the defense, when the informant was acquainted with the appellant prior to the criminal event, and when there is any evidence that the Government sent the informant away. See, e. g. *Velarde-Villarreal v. U. S.,* 354 F.2d 9 (9th Cir. 1965); *U. S. v. Clarke,* 220 F.Supp. 905 (E.D.Pa.1963). These decisions are based upon notions of fundamental fairness. When the Commonwealth used informers, the possibility of entrapment is great. Since the Commonwealth chooses to use the informants, it is fair to require them to take appropriate precautions to insure that no innocent man should be punished. I note this trend with approval and I feel it is not too burdensome to require the Commonwealth to make reasonable efforts to maintain an address or phone number where the informant can be reached when special circumstances exist.